```
 1  UNITED STATES BANKRUPTCY COURT
    WESTERN DISTRICT OF NEW YORK
 2  _____

 3  IN RE:

 4      D.A. ELIA CONSTRUCTION CORPORATION, BK 94-10866

 5                  Debtor.

 6  _____

 7

 8

 9              Proceedings held before the
10  HONORABLE MICHAEL J. KAPLAN, United States
11  Bankruptcy Court Judge, taken in Suite 350, Part I
12  of the courthouse at the OLYMPIC TOWERS, 300 Pearl
13  Street, Buffalo, New York, on November 3, 2004,
14  commencing at 10:30 A.M.
15
16
17
    APPEARANCES:    DAMON & MOREY, LLP,
18                  BY:  DANIEL F. BROWN, ESQ.,
                    298 Main Street,
19                  Buffalo, New York 14202,
                    Former counsel for the Debtor.
20
                    FEUERSTEIN & SMITH, LLP,
21                  BY:  MARK E. GUGLIELMI, ESQ.,
                    17 Saint Louis Place,
22                  Buffalo, New York 14202,
                    Appearing for the Debtor.
23
24
    PRESENT:        LINDA J. RANDALL,
25                  Court Reporter.
```

THE COURT: Elia. This is a motion -- actually an order to show cause for stay pending appeal. I rendered a decision allowing all of Damon and Morey's fees in this case without prejudice to the debtor and/or the debtor's principle to bring suitable action if they think they can for prepetition malpractice. Appearances, please.

MR. GUGLIELMI: Mark Guglielmi from Feuerstein and Smith for the debtor.

MR. BROWN: Daniel Brown, Damon and Morey, former counsel for the debtor.

THE COURT: I read the moving papers. I didn't get any opposition.

MR. BROWN: Your Honor, I think it's pretty much a matter of black letter law that you're talking about a money judgment against an entity that is nothing at this point but a holder of a fund of money. It's not irreparable harm that you're being asked to pay it. There is a procedure in place where buying would get an appeal bond. There has not been shown here why there is irreparable injury if they have to pay.

THE COURT: Assuming that

1  the law firm of Damon and Morey would be good
2  for any --
3              MR. GUGLIELMI:     Your honor, I
4  think the issue is how to protect all parties
5  pending the appeal and I think the clear way to
6  do that, since my client has the full amount of
7  the funds, is to keep the full amount of the
8  funds held pending the appeal.
9              THE COURT:     I don't quite
10 see it the same way as Mr. Brown because my
11 understanding is that these funds are still in
12 a VIP account and because they are still in a
13 VIP account I have yet to be asked for an order
14 directing payment.
15             MR. BROWN:     Actually, Your
16 Honor, I wanted to clarify how the Court wanted
17 us to proceed in connection with this.  I know
18 that the Court's order allowed all of Damon and
19 Morey's fee application.  We asked for the
20 entry of a judgment.  I don't know if you want
21 a separate application to go there.  The order
22 as entered didn't reflect the dollar amount and
23 the clerk's office has incorrectly reflected on
24 the docket that it was allowed in the amount of
25 the final fee app only, and doesn't reflect all

1     the holdbacks.

2     THE COURT: So you need to

3     know how to submit the order. Let me first

4     make a ruling. I'm not going to grant the stay

5     because I don't see any merit for the appeal.

6     This is a situation in which -- and the

7     likelihood of success of appeal is one of the

8     elements that the Court has to consider.

9     This is a case in which Mr. David

10     Elia is challenging, and perhaps other members

11     of his family are challenging the Damon and

12     Morey fees to the extent of upwards of a

13     million dollars, although the total amount on

14     the table for Damon and Morey was something

15     around seven or eight hundred thousand.

16     MR. BROWN: I believe the

17     number was three hundred and thirty -- three

18     fifty-eight seventy-six, but all the fees

19     throughout the time.

20     THE COURT: And the

21     situation here is that David Elia, who happens

22     to be an attorney, as I understand it, a

23     licensed attorney, made to me on his signature

24     a statement that the reason that he gets to

25     argue the prepetition, he believes a million

1  dollars worth of prepetition malpractice by the
2  law firm that he freely chose to utilize for
3  the debtor's business activities for ten years
4  thereafter, is that he had an agreement with
5  Bill Savino that in connection with the final
6  allowance I would adjudicate all of the pre and
7  postpetition malpractice claims that Elia wants
8  to assert against the Damon and Morey law firm,
9  and that Mr. Savino agreed to that and a waiver
10 of the statute of limitations to accomplish it.
11             I find that to be the most
12 pathetically absurd statement I've ever read in
13 a document signed by a lawyer.  I think if this
14 had not been signed by a lawyer I might have
15 said it's just an absurd misunderstanding of
16 the applicable law by a layperson.  But coming
17 from David Elia it is a contrivance.  He knows
18 it can't be true and that I would never, ever
19 give this federal forum to an adjudication of
20 prepetition malpractice by the law firm he
21 chose to represent his debtor and his company
22 in Chapter 11 in connection with the final fee
23 allowance ten, twelve years later.  It's
24 ridiculous, it's absurd.  I find it to be a
25 contrivance.

1          What is more bothersome is the
2  fact that he might possibly think that I'd
3  believe it.  I've been presiding in this case
4  for ten years.  I've had countless hearings in
5  this case and written many decisions, some of
6  which have gone up on appeal, and some have
7  gone for him and some against him.  I've been
8  affirmed, I think, on everything that I have
9  ruled on that's gone up on appeal in the D.A.
10 Elia case.  The notion that he could sit in
11 this courtroom as he did for ten years and
12 observe my conduct of his case and think that
13 I'd believe that nonsense is really beyond the
14 bail.  That's number one.
15         Number two, there's no right to an
16 evidentiary hearing, in my view, in connection
17 with a fee application.  To the extent that I
18 ever said that there is one, is if the firm
19 wants one.  If it's the firm whose fees are
20 sought to be reduced wants an evidentiary
21 hearing, they can have it.  That happened to
22 this firm in a different case.  They requested
23 a hearing ten years ago in another case and I
24 conducted the evidentiary hearing.  It turned
25 out to be a mistake to let them have it because

1  it involved attorney/client privileges.  I
2  revoked that, to have the evidentiary hearing,
3  and I ruled on the papers and I was affirmed by
4  Judge Elfvin.
5           Bankruptcy court has no duty to
6  litigate fee objections because ultimately the
7  burden of persuasion is on the professional
8  persuading that their fees are reasonable.  To
9  read what I read coming from Mr. Elia as the
10 basis that he wants me to conduct an
11 evidentiary hearing into the fee application to
12 Damon and Morey is ridiculous.  He's not
13 entitled to it and not going to get it.
14           Lastly -- that's enough.  There is
15 no merit to the appeal, consequently there will
16 be no stay.  And you're free to ask a district
17 judge for a stay, pursuant to Bankruptcy Rule
18 8005.  You've performed your duty of asking for
19 it.  It's denied.
20           Now, on the issue of
21 disbursements.  I think the best way to
22 approach, because you didn't have the dollar
23 amount, or at least I didn't have one readily
24 available, is to make a motion for an order to
25 pay and state the amount.  There can be a

1 response to that. I'll rule in connection with
2 that and that way we've got it properly teed up
3 for the district judge who gets the appeal of
4 my ruling to also get the appeal of the order
5 to pay. It might require another motion for
6 stay pending the appeal and I'm not predeciding
7 that. So make a motion.
8     MR. BROWN: Thank you,
9 Your Honor.
10     MR. GUGLIELMI: Your Honor, if
11 I may, and I don't anticipate changing your
12 mind, but regarding the issues of malpractice,
13 it's our position, and I respectfully think
14 this goes to the appeal, is that the client
15 believes that those issues shouldn't be
16 litigated here as a case of malpractice, but
17 should be viewed in light of reasonableness
18 postpetition action.
19     THE COURT: It's a crock
20 of baloney. Can I be any more honest than
21 that? It's a crock of baloney. He shouldn't
22 have retained Damon and Morey to represent him
23 if he felt they were guilty of prepetition
24 malpractice. He shouldn't have continued to
25 retain them year after year after year after

1  year and have me listen and observe the
2  contributions made by the firm over the years
3  to this case, and then ten years later come in
4  and say, oh well, I had no choice but to retain
5  them.  It's an insult.  If I would have
6  believed him and said, okay, you got a bridge
7  in Brooklyn for me to buy too?  It's
8  ridiculous.  Enough.  I can't be any clearer
9  than that.
10          MR. GUGLIELMI:       Thank you,
11  Your Honor.
12          MR. BROWN:           Thank you,
13  Your Honor.
14
15                  *    *    *    *

1   I certify that the foregoing is a correct
2   transcription of the proceedings recorded by me
3   in this matter.
4
5
6
7
8
9   _____
    LINDA J. RANDALL,
10  Court Reporter.
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25